## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GAYLEN NUCKOLS,** | * | **CIVIL ACTION NO.:** |
| | * | |
| **Plaintiff,** | * | |
| | * | **SECTION:** |
| **versus** | * | |
| | * | |
| | * | **JUDGE:** |
| **THE ADMINISTRATORS OF THE** | * | |
| **TULANE EDUCATIONAL FUND** | * | |
| | * | **MAG. JUDGE:** |
| **Defendant** | * | |
| | * | |
| | * | **JURY DEMAND** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Gaylen Nuckols, who respectfully submits this Complaint and avers the following:

### PARTIES

1. Plaintiff, Gaylen Nuckols, ("Ms. Nuckols") is a person of the full age of majority, domiciled in the County of Harris, State of Texas.

2. Defendant, The Administrators of the Tulane Educational Fund ("Tulane"), the board charged with overseeing the operation and administration of the Tulane University, an institution of higher learning, with board members domiciled in Orleans Parish, State of Louisiana.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1331, as Plaintiff's claims arise under the federal law.

4. Venue is proper in the Eastern District of Louisiana, as a substantial part of the events or omissions giving rise to the claim occurred in this District or otherwise in accordance with 28 U.S.C. § 1391.

5. This Court has jurisdiction over the Louisiana state law claims asserted herein pursuant to 28 U.S.C. § 1367, as said state law claims form part of the same case or controversy under Article III of the United States Constitution.

## FACTS

6. Ms. Nuckols began her employment with Tulane on or about December 1, 2017.

7. She was hired as the manager of Environmental Health and Safety.

8. Ms. Nuckols is deaf and wears a cochlear implant, which is visible a majority of the time because she wears her hair up and the implant can be seen.

9. Additionally, Ms. Nuckols included her disability information on her application.

10. Throughout most of her employment with Tulane, Ms. Nuckols did not have any issues with coworkers; however, one employee working under Ms. Nuckols, Mariah Sandoval, acted insubordinately.

11. When this occurred, Ms. Nuckols reached out to Pamela Fatland, the Safety Program Manager.  Ms. Fatland asked her to document the insubordinate actions and email her, which Ms. Nuckols did.

12. Not only did Ms. Sandoval act in an insubordinate manner, she also made false allegations to Ms. Fatland regarding Ms. Nuckols' attendance.

13. Ms. Fatland addressed the false allegations with Ms. Nuckols, and Ms. Nuckols voluntarily offered to take a daily picture of herself at work upon arrival and/or call Ms.

Fatland on a daily basis to inform her she had timely arrived to work and to prove to Ms.

Fatland her attendance was not an issue

14. Notably, no one in the environmental health and safety department was required to clock

or sign in upon arrival to work

15. In or around March or April of 2017, Ms. Nuckols and Amanda Smith counseled a

Tulane lab uptown concerning issues within the lab.

16. On or around April 2, 2017, a meeting was held with Ms. Nuckols, Ms. Marne Smith,

Ms. A. Smith and Ms. Fatland.

17. At this meeting, Ms. Nuckols was counseled on her facial expressions, communication

(tone), and fragmented speech.

18. Ms. Nuckols jokingly suggested that it seemed as though they wanted her to get Botox,

and Ms. M. Smith responded, "Maybe that's a good idea."

19. In this meeting, Ms. Nuckols reminded everyone that she was deaf and wore a cochlear

implant.

20. Ms. Nuckols' co-workers were aware of the cochlear implant, as co-workers would play

with and ask questions about her cochlear implant at monthly meetings.

21. Specifically, Ms. Smith saw it at one monthly meeting when George Troxler, a

co-worker, was playing with the implant, and Ms. Smith noted that the implant was

"cool."

22. Ms. Fatland also knew of the implant based on a specific instance at Mardi Gras when

Ms. Nuckols and Ms. Fatland were together, and Ms. Nuckols informed Ms. Fatland that

she had to take her implant out because of the rain.

23. After the April 2 meeting, Ms. Nuckols went to the human resources department ("HR") to seek direction and clarification on the comments made during the aforementioned meeting.

24. She specifically asked Mary Letsch, Tulane University Assistant Director, Employee Relations and Senior HR Business Partner for the following:  (1) a vocational program in the area and/or if Tulane provided a vocational program an employee could attend; (2) assistance with alternative solutions for certain settings (rain, large crowds, laboratories (especially chemical)) when Ms. Nuckols did not wear her cochlear implant because of possible damage; (3) one alternative Ms. Nuckols presented was a personal sound amplifier; and (4) help so that Ms. Nuckols would not lose her job because of facial expressions when she talked, the tone of her voice, and word pronunciation.

25. However, rather than provide Ms. Nuckols with any of these accommodations, Ms. Nuckols was provided with a form that disclosed counseling information, and no additional information or accommodations were offered.

26. On or about April 6, 2017, around noon, Ms. Fatland called Ms. Nuckols and simply stated she was sorry for what was happening

27. Ms. Fatland informed Ms. Nuckols that she needed to attend a meeting that afternoon and Ms. Fatland continued to apologize without further information.

28. Based on this information and on the recent interaction with HR, Ms. Nuckols knew that the afternoon meeting was regarding her termination.  At that point, Ms. Nuckols sent Ms. M. Smith an email of resignation.

29. A charge was filed with the Equal Opportunity Commission on August 9, 2018, which detailed the facts surrounding this lawsuit and allegations of discrimination under the Americans with Disabilities Act ("ADA").

30. A Right to Sue letter dated January 24, 2020, was received by Plaintiff allowing her to bring this action.

## ADA-DISABILITY DISCRIMINATION

31. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

32. Defendant is an "employer" for purposes of the ADA, 42 U.S.C. § 12101, *et seq.*, as it is engaged in an industry affecting commerce that employs over 15 full-time employees.

33. Ms. Nuckols was an employee for the purposes of the ADA, and has a disability under the ADA based on her diagnosis of deafness, which if left untreated, substantially limits one or more of her major life activities, such as hearing, speaking and communicating.

34. Ms. Nuckols suffered from her deafness throughout her entire employment with Defendant.

35. Everyone that worked with Ms. Nuckols, including her supervisors, Ms. Fatland and Ms. M. Smith, was aware of Ms. Nuckols' disability.

36. Ms. Nuckols was qualified for her position as the manager of Environmental Health and Safety and was able to perform the essential functions of the job.

37. She worked in academics for the twelve years preceding her employment with Defendant and cultivated a reputation to coordinate, implement, and manage environmental, health, and safety initiatives.

38. The combination of her work experience and education has provided her with skills in the following areas, which are all pertinent to the job duties of her position at Tulane: physical, environmental, natural, and life sciences; emergency/risk management; chemical/biological factors; environmental health and safety; regulations, compliance, protocols, and programs (at both the federal and state levels); hazardous materials management; and behavioral health.

39. Considering her skill set, Ms. Nuckols exceeded qualifications and performance requirements set by Tulane.

40. Initially, Ms. Nuckols could perform her job without an accommodation, and she did so for several months.

41. However, after the unwelcome comments, Ms. Nuckols approached HR to determine if she could be provided with an accommodation since her disability caused an issue with her supervisors.

42. Had she been provided an accommodation, Ms. Nuckols could have continued to perform the essential functions of her job.

43. Defendant failed to provide a reasonable accommodation when Defendant failed to (1) provide information on a vocational program; (2) assist with alternative solutions for certain settings when Ms. Nuckols did not wear her cochlear implant because of possible damage; (3) provide a personal sound amplifier; or (4) offer any other accommodation to Ms. Nuckols.

44. In Ms. Nuckols' requests to HR, it was made clear that the accommodation was necessary for her to continue performing her job duties because of the harassment and bullying she

endured by coworkers.

45. All of Ms. Nuckols' requested accommodations were reasonable and would not place an undue burden on Defendant.

46. Specifically, the request for a personal sound amplifier was reasonable because it cost less than $500, and providing Ms. Nuckols with information on vocational programs and/or sending her to a vocational rehabilitation class was reasonable because many classes are free and can be done outside of work

47. If Ms.Nuckols had been provided this accommodation, she could have continued to do the same work she was doing throughout her employment and would have no impact on her work-product.

48. Ms. Nuckols suffered an adverse employment action because of her disability when she was placed in a situation in which she had no other option but to resign.

49. At the point in which Ms. Nuckols resigned, she had been told by her supervisors that her facial expressions, tone of her communication, and fragmented speech were not a good fit; she was also told that Botox may help with these issues; and she was not given any guidance, information or possible accommodations by HR when she requested guidance on her next steps to resolve the communication issues stated above.

50. Tulane created working conditions so unpleasant that a reasonable person would have felt compelled to resign.

51. Ms. Nuckols is entitled to damages from Defendant under the ADA, including:

    a.   back pay, including wages and salary, overtime, and benefits;

    b.   reinstatement, or front pay;

    c.   non-economic and other compensatory damages, including physical pain and suffering and mental anguish;

    d.   past and future medical expenses;

    e.   pre-judgment interest;

    f.   Costs;

    g.   attorney's fees; and

    h.   punitive damages.

## HOSTILE WORK ENVIRONMENT

52. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

53. Ms. Nuckols belongs to a protected group because she is disabled as defined under the ADA based on her deafness.

54. She was subjected to unwelcome behavior, which was created by her supervisors, Ms. Fatland and Ms. Smith.

55. The harassment was based on her disability and the cochlear implant, as evidenced by the comments in the April 2 meeting.

56. The harassment affected the condition of employment because Ms. Nuckols was required to work under two individuals who made fun of her disability and told her to get Botox to fix the facial expressions she made.

57. More so, the unwelcome comments and actions by Ms. Fatland and Ms. M. Smith were based on Ms. Nuckols' status as a deaf individual, and this treatment was so severe that it unreasonably interfered with Ms. Nuckols' job performance.

58. Tulane knew of the harassment when she informed HR of the harassing comments.

## **LOUISIANA EMPLOYMENT DISCRIMINATION**

59. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

60. The Louisiana Employment Discrimination Law also prohibits discrimination based on a disability.

61. The foregoing allegations are thus incorporated herein by reference.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against Defendant, as follows:

      a. Back pay, including wages and salary, overtime, and benefits;

      b. Reinstatement, or front pay;

      c. Other compensatory damages including those for emotional and physical injuries;

      d. Medical expenses past and future;

      e. Lost wages, past and future;

      f. Pre-judgment interest;

      g. Punitive damages;

      h. Attorney's fees and costs.

## **JURY DEMAND**

Plaintiff requests a trial by jury.

Respectfully submitted,
**SANGISETTY LAW FIRM, LLC**


*/s/ Whitney Wilson*
Ravi K. Sangisetty, BAR NO. 30709
Whitney Wilson, BAR NO. 38447
3914 Canal Street
New Orleans, Louisiana 70119
Telephone:          504-662-1016
Facsimile:          504-662-1318
whitney@sangisettylaw.com
ATTORNEYS FOR PLAINTIFF


**\*\*\*\*SERVICE WILL BE ACCOMPLISHED THROUGH WAIVER**